Today is Shale Norris v. Cape Elizabeth School Department et al. Appeal number 19-2167 You have three minutes for an opening statement, and then you will be questioned. Thank you, Your Honor. Good morning. My name is Melissa Huey, and I represent the appellant's Cape Elizabeth School Department et al. Contrary to the contention of the plaintiff, a contention that was accepted by the court below, this is not a case about the problem of sexual violence in schools. Rather, it is a case about the extent to which the law allows school administrators to do their jobs to keep students safe, both physically and emotionally. We have imposed upon the administrators of our public schools the duty to oversee and promote emotional, intellectual, physical, and sexual safety of students in their care. With this duty comes the obligation to confront and address behaviors that are antithetical to the school's mission and efforts to promote a safe environment conducive to productive learning and student success, from ensuring physical and emotional safety, to combating illegal drug use, to addressing sexual harassment and bullying. It is for this reason that the Supreme Court has long held that administrators are entitled to great deference in their assessment of appropriate restrictions on student speech and behavior inside the schoolhouse gates. This includes behavior that proves disruptive or infringes on the rights of other students, as well as that which administrators reasonably interpret as having the potential to disrupt or is otherwise in conflict with the school's pedagogical charge. In this case, the district court did not grant the administrators of Cape Elizabeth High School that requisite level of deference, instead supplanting its judgment for that of persons positioned to investigate and assess student conduct and determine appropriate sanctions. Thus, having found as a fact that the quote, actual reason, close quote, the school suspended AM was for violation of its bullying policy, and that's on page 17 of the addendum, the court went on nonetheless to hold that the plaintiff had a reasonable likelihood of success because the court could not be sure that student rights were interfered with or that there was disruptive to the school. The statement, there's a rapist in our school and you know who it is, posted anonymously on a sticky note in the girls' bathroom does not promote a political objective or galvanize fruitful debate. It is an unfounded, alarmist suggestion of danger and culpability. It is specific and personal. There is a rapist, in other words, a particular person in our school, the very place that the school administrators have an obligation to keep safe. And by posting those words, by sounding that alarm, AM triggered a legally mandated obligation by the school to investigate the allegation, to find out who the sexual predator was so that, as Title IX requires, it could take appropriate remedial action as necessary. What followed, if not inevitably, at least reasonably to be anticipated was disruption. There was an atmosphere of fear and anxiety among the Cape Elizabeth High School community and a full-scale investigation that interrupted the school day of at least 47 students and various staff members and was found unfairly targeted. Counsel, that's time. Counsel, can we start with a discussion of the Tinker case? Your opening argument seems to be that Tinker doesn't apply here because you believe this is not political speech and, therefore, we should use a standard other than the Tinker standard. In fairness, you then go on and you make an argument that, well, even if Tinker applied, the Tinker provides three justifications on the part of the school system to justify restriction of speech. And you say, I believe, all three are involved. There was actual disruption in any event. Even if there wasn't, the school system could have reasonably anticipated there would be. And, thirdly, that this anonymous note, which did not name who the rapist was or, for that matter, who the you was, inevitably bullied the student in violation of his rights. So, let's go to the question of the school system's justifications. As I read your brief, it amounts to the district court abused its discretion in finding that our two-part justification was not sufficient on preliminary injunctive. That two-part response was, first, we had to do an investigation, and that was disruptive. And, second, well, this student, number one, was ostracized at lunch in the school, what, a day after the note was posted. So, let's start with your first justification under those categories that has to do with the fact that you had to do an investigation. That's very dangerous. The school system had to do an investigation under Title IX of any complaint. And, are you seriously suggesting that when the school system has such an obligation, that carrying out the Title IX investigation counts as disruption of a school under the Tinker analysis? I'm not suggesting that carrying out any Title IX obligation is substantial disruption under the Tinker analysis. What I am suggesting is that under the facts of this case, where we have an anonymous note, so nobody knows who the complainant is, that suggests that there is a violent predator in the school, that the obligation of the school is to find out who that is and find out immediately. And, because of the way that the complaint was made, that caused and could reasonably likely... No, no, you're not answering my question. Even if she had signed the note, you would have had to investigate, correct? We would have had to investigate, but we did not. So, you're saying there's something special about the facts here that transforms an obligation under Title IX to investigate into the type of burden that justifies restriction of speech. What is it about the facts? And, remember, we're on abuse of discretion review, and the district court said, you know, discovery may produce facts that are different than that at this stage. But, at this stage, the school system has not come up with enough facts. So, answer that, please. Okay, well, the first point I want to make is that I think that that really goes to the crux of our argument here, which is that what the district court was saying was that, in its view, it couldn't determine that there had been a collision with the rights of another or that there had been substantial disruption. What the appropriate test, our contention is, is whether a reasonable school administrator could believe that this would cause disruption. Okay, so let's go to your second justification, which is putting aside the fact that you had to investigate. The second justification was, well, this was obviously bullying of a student and led to his being ostracized. But your very investigation showed that rumors had been circulating for months about this particular student. The note was anonymous. The note did not name him. There is a dispute of fact, as the district court found, about whether the student who posted the note, in fact, was referring to him. And, indeed, this happened after a long series of events in which she tried to call to the school system's attention an ongoing problem of sexual harassment and attacks in the school. So what is it about this which would lead a reasonable administrator, in the face of a note which did not name a particular student, and after the investigation shows there's no link between, or at most an attenuated link, hardly a causal link, between the note and the bullying of the student, what would lead a reasonable administrator to conclude that she had to be suspended as discipline for violating the rights of another student? So, with respect, I disagree that this was an attenuated connection. And let me explain why. In the record, it is undisputed, for example, that the school administrators were told by other students that AM had identified student one as the target of the note. And that's on page 100 of the joint appendix. It is also undisputed that at the September 17th meeting that AM had with the assistant principal that she talked about student one, that she said that she thought it was unfair that he was idolized by the faculty, and that she said that her intention was to create a culture of fear. You put those two things together, as well as other things that are in that investigation. I'm sorry. I thought the district court found that she denied that that was her intent, and there is a dispute of fact over that. So, I think the district court was incorrect in reading the record there. She denied statements that were made at the September 26th meeting with Principal Shedd. She did not, and it's very clear in the record that her declaration talks about the September 26th meeting. She does not deny what was said at the September 17th meeting with Assistant Principal Carpenter. His description of it is on pages 100 and 101 of the appendix, and there is no denial of that in her declaration. I'm going to turn this over to Judge Selya at this point. Thank you, Judge Lynch. Counsel, first, I want to, for what use it may be to tell you that I certainly share Judge Lynch's skepticism as to whether the school's investigation can itself be the sort of disruption that the Tinker Court had in mind. But put that to one side. I read your brief a little differently, I think, than Judge Lynch does. I read your brief as suggesting that the basis for the administrator's action, the reasonable basis for it, was that the Note A was potentially a cause for serious disruption of schools' pedagogical functions because of the severity of the note, complicated by the fact that the note was not only alarming, but was anonymous and, fairly read, suggested that a sexual predator was on the loose in the school. And I also understand that you justify the school's action on the ground that the school has a demonstrable interest in preventing bullying and that the school administrators reasonably perceive the note to be an act of bullying. Now, do I understand that those are the two central arguments that you're making on this point? Yes, Your Honor. All right. Now, with respect to that, how should the district court have judged the potential for serious disruption? Does that have to be judged at the time the note is posted? Because at that time we don't know how long it's going to stay up, how exactly people are going to respond to it, because we're dealing here with potential. Or do we judge it in a more post hoc fashion, taking into account a broader sweep of events? So, I think no matter which way you judge it, the... But that's not going to help me. What will help me is to let me know, on your theory, which way we should look at the note. Do we look at it at the time the note is posted, or do we look at it after the fact, that the note was only there for five minutes, et cetera, et cetera? So, let me explain to you why I think that's a good question but a difficult one. And I look specifically at the language. Difficult questions are usually good ones. No, they're not. I'm not sure I agree with that. And I look specifically at the language of tinker, because what they're talking about in tinker is, A, a reasonable belief that there could be disruption. So, that would be at the time that the note is posted. But they also look at actual disruption, which is also a basis for restricting speech. So, I think that the Supreme Court in tinker suggests that both at the time and later on, when you see what's happened, are appropriate points in time to measure the disruption. Maybe. But here, the only evidence that you have of actual disruption is the investigation that the school conducted and the consequent disruption that that caused. And if I suggest to you, arguendo, that you'd be well advised to leave that to one side, we're really looking at the first of those considerations, whether or not there was a reasonable apprehension on the part of the school administrators when the note was first discovered. So, I will most certainly listen to your advice and leave that aside. And I'd like to answer that in two ways. One is, if you look at what the school thought when they initially saw the note, this is an alarming note that suggests that there is a criminal walking around the halls of Cape Elizabeth High School. And I think it's reasonable to assume that that note would be disruptive. I also, though, want to add that even though we're putting aside the disruption prong, there is also the collision with the rights of student one, which also complies with the tinker analysis. That's why I had mentioned to you originally, and I understand one of your theories to be that this was reasonably perceived to be an act of bullying, because that would be another way of saying that it was an interference with the rights of student one. On that point, and again, I'm trying to piece together things in your brief, do I take it that your principal argument on that point is that tinker, and particularly the latest Supreme Court cases, Frazier and Morse, those cases, suggest that there is some deference to, some reasonable deference to, to the administration's judgment about whether that constitutes an act of bullying, and that the district court in this case failed to accord any deference to the administrator's judgment? That's precisely what we're arguing. In Morse, the court said if a reasonable administrator could determine that the language promotes drug use, then the speech can be restricted. And our contention is that, and that's because illegal drug use, fighting illegal drug use is an important thing for schools to do. Fighting bullying is equally as important. So if a reasonable administrator could construe this as bullying, and we know that that is what Cape Elizabeth School Department did, because that's the fact that this district court found, that that was their reason for the suspension. So really the question here becomes, is it, did the administrators abuse their discretion in determining that this was bullying? And as I understand it, your assignment of error here on this point is that the district court, rather than asking could a reasonable administrator have regarded the posting of this note as an act of bullying, the district court instead said, I find that in my judgment this wasn't an act of bullying, and therefore that justification doesn't work. Yes, Your Honor, that's correct. Okay. Okay. That's very helpful. Thank you. I have no further questions, Judge Lynch. Judge Barron? Okay. Well, there's a lot of different moving parts to this case. Let me do it this way. Let's assume for a second the speech is protected so that the Tinker framework applies. And I realize you dispute that. But if we just hold that constant for a second and assume that this speech is protected, then under Tinker you can only restrict it if there's substantial disruption or if there's a right of a third party, correct? Or if there's a reason to anticipate substantial disruption or collision with the rights of a third party. Okay. So my first question is what do we do in a case in which the injunction is sought to prevent a suspension, and the only ground given for the suspension is bullying, not substantial disruption? Then you move to the collision with the rights of another student. Does that mean then that even if the record showed or provided the basis for concluding that there was substantial disruption, the school district can't rely on that fact to support the suspension because it didn't give that as the reason for the suspension? I don't think so. I think you start by looking at the speech. And the question is can the school restrict that speech? So if under Tinker – Let me just pursue that because it doesn't completely make sense to me. She is seeking a preliminary injunction against the suspension, and the ground that's been given as to why she's suspended is solely that it interfered with the rights of a third party because the only ground given was bullying. So if that ground doesn't hold up, how could the suspension be sustained? So I think step one is you take the speech, and you analyze if we're using the Tinker analysis. And I understand that for the purpose of this question we are. You take the speech, and the question is can we restrict it? But in all of the other cases, the way you restrict it is by exacting a punishment for the reason that would allow you to restrict it under Tinker. But here, if you're going to rely on substantial disruption and not on the bullying, what you're asking us to do is say, well, we're punishing the speech through a suspension based on bullying, but we'd like you to uphold that punishment of the speech based on a ground we didn't give as the reason for the punishment, which would be substantial disruption. I just don't know of a case that's done that. Do you have one? I don't have a case that's specifically done that. And the reason this is so complicated is because it is sort of a progression of different obligations that the school has. So initially they have this obligation to keep their students safe physically and emotionally, and there's this alarm. Then they look into it and they find out that, at least in their determination, that the note was bullying of student one. Now they have an obligation under Maine law to address the bullying. So that's what they did. So I think that initially they had the right to restrict the speech because of substantial disruption, but then I think when they find out that the speech is bullying speech, they certainly have a right to restrict that as well. Okay. Assuming still that Tinker applies and assuming that my view is that the school districts stuck with the reason they gave for the punishment in analyzing it under Tinker, which here was bullying, because that's, I hear you saying, the only ground they gave as to why she suspended based on the speech that she engaged in was that they deemed it to be bullying. With respect to how we're supposed to think about a preliminary judgment at this stage of the litigation, if there's a factual dispute in the record as to whether the bullying judgment was a reasonable one, what are we supposed to do? In other words, she's seeking a preliminary injunction. If the record's unclear on that point, who wins? So I think that if you're asking me whether the record is unclear as to whether there was bullying or not, I don't think that's the appropriate question. I think the question is, is there enough in this record? Okay. I'm asking whether, suppose I think the record is unclear as to whether there was a reasonable basis to think it was bullying. Who wins then? I think that the school district still prevails because the record is certainly clear as to substantial disruption. Let's put aside substantial disruption. If you only focused on bullying and the record were unclear as to whether there was a reasonable basis to believe it was bullying, in other words, not 51% in favor of the child, not 51% in favor of the school. It's just unclear. It's a genuine issue of fact. It's going to have to be sorted out. Who wins then for a preliminary injunction? I assume the burden is on the student to get the preliminary injunction. What does her burden have to be? Can she meet it if there is a lack of clarity about whether there was a reasonable basis to believe it was bullying? I think that she can't because the Supreme Court has made clear that we need to give deference to the discretion of the school administrator. I think she has the burden to show that this was a clear abuse of their discretion in deciding what they decided. Okay. One last set of questions. If we now go to the threshold issue of does Tinker apply at all here, I take it you have not made an argument on appeal that the speech was defamatory and that's why Tinker doesn't apply. Is that right? That's correct. I don't think that the record is clear on that. Okay. So, it's potentially protected speech in the sense that we know defamatory speech is not protected. So, it's at least potentially protected. And then the question is, is there some reason because of the school of context that unlike the type of speech in Tinker, this is more like the speech in Morris, Frazier, et cetera? As to that question, not talking about if Tinker applies, is there a ground for restricting it because of an invasion of a third-party interest or substantial disruption, but at the threshold question of is it protected speech at all under Tinker? What is your argument for why it's not? My argument is that putting Tinker aside, which deals with pure political speech, we have in this country charged our school administrators to do certain things that are really important, such as prohibit illegal drug use. And that's why in Morris they say if the language promotes illegal drug use, then it may be restricted by the school. And my argument is this is more like Morris because it's certainly true that if we can allow schools to control language that promotes drug use, we can also and we must allow schools to control language that bullies students. Bullying is an important problem in schools. Is your assertion that it's not protected under Tinker, that the Tinker analysis doesn't apply, dependent on a determination that this would constitute bullying? No, my argument that Tinker doesn't apply depends on whether or not the statement is political speech. If it's not political speech, then it goes with that. But is your only reason for concluding that it's not, that it qualifies as bullying? In other words, suppose you don't think it's bullying, is there some reason why we should not apply Tinker at all? And what is it about the nature of speech that leads to that conclusion? Because it's an alarmist charge that there is a specific dangerous criminal in the halls of Cape Elizabeth High School. That is not a political statement. Even if it's not a political statement, what would be the reason to think that an accusation of serious misconduct that could pose a danger is the kind of thing that shouldn't be protected? After all, it's pretty different than advocating illegal activity. Instead, it's calling out illegal activity for somebody to do something about it. Why would that not be protected under Tinker? What authority would suggest it would make sense to treat that as the same thing as advocating doing something illegal? Well, I would suggest that by posting the note in the bathroom, the student's bathroom, it is clear that it's not calling something out. It's trying to scare people. And trying to scare people is something that I think that school administrators should have the discretion to restrict. Okay, thank you. All right, we've now reached the point where we're going to permit some closing arguments. I'm sorry, we're not there yet. All right, I think it's time to hear from Norris's lawyer. Thank you, Your Honor, and may it please the Court. My name is Emma Bond, and I represent the plaintiff, Appellee Shale Norris, on behalf of her minor daughter, A.M. In this student free speech case, the district court got the legal, factual, and equitable issues exactly right in granting the preliminary injunction. Counsel, can I give you some advice? Whatever your prepared statement, a number of very significant questions have been asked by the court. Perhaps you could turn to those. Certainly, Your Honor. I'll start with where the court left off with Attorney Huey, which is the issue of whether Tinker applies at all. And the claim appears to be that Tinker only applies to core political speech. And as we addressed at length in our brief and as the district court found, A.M. speech did, in fact, address a core issue of public concern to herself and to students in the school. But even setting them aside, the decades of case law since Tinker, over 50 years, and many circuits applying it, have not limited Tinker in the way that the school suggests. To the contrary, Tinker is the general rule subject to only the three exceptions that the Supreme Court has articulated. So, for example, we see Tinker applying, indeed, in cases of political speech or speech on a matter of public concern, like in Gilman, a case about a student advocating for tolerance of gay students, or in the BH case about students speaking out about breast cancer awareness. But we also see Tinker applying in other cases that are quite far from speaking out on matters of public concern or political issues. So, for example, in Bell, there was a rap about threatening to shove a pistol down someone's throat. Let's assume that Tinker applies. My two colleagues have focused on the different tests under Tinker, and Judge Barron has focused on the fact that the letter suspending the student articulated as a ground for the suspension, the bullying, which only goes to the Tinker concern about invading the rights of other people. So, do you agree that the justification provided was a justification that only went to the question of the reasonable apprehension of bullying? Yes, Your Honor. The bullying, as Your Honor and Judge Barron noted, was the only issue that was raised in the suspension letter. And that's important not just because that was the school's expressed concern at the time, but also because, just like students don't leave their First Amendment rights at the schoolhouse case, they don't leave their due process rights there either. So, students do have a due process right to notice and the opportunity to respond to the real reason for their discipline. So, in this case, A.M. did receive notice that she was suspended for bullying. She then had the opportunity to appeal that to the superintendent. And at no point there was there other justification provided. So, it does seem to be correct that the school is limited to the justification they provided in the letter. If I may interrupt you, I'd like to go to Judge Salyer's point about what is the appropriate time for us to look at. Is it when the note is posted? Is it when the school system is given the note? At that point, do we take into account what the school system already knows from prior events? Your sister says that they already knew from prior events that the note probably referred to this particular student. On the other hand, they already knew from prior events that your client had repeatedly tried to raise with the school a matter of great public concern, which is sexual abuse happening in the public school system, and that she was unhappy with what she thought were the inadequate responses. So, can you address those points, please? Yes, Your Honor. I'm not aware of a case that delved specifically into this issue, and instead they appear to provide a more general analysis. But the only sensible way to approach this would be to look at what the school knew at the time of the punishment. That is the moment when they are choosing to discipline, when they are offering the justification for disciplining. So, that is the moment when it makes most sense to consider the totality of the circumstances that the school knew. So, in this case, what the school knew at the time that it disciplined A.M. did include the four corners of the note. It included A.M.'s identity as someone who had been an advocate on the issue of sexual assault and awareness and critiquing the school's handling of these claims, and it included that A.M. had spoken to the press about these issues. So, this flexible approach is also consistent with, for example, the way that courts assess whether speech is on a matter of public concern, which asks merely whether, as this court said in Davignon, whether the issue could be fairly considered, or in Morse, whether it could be plausibly considered. Suppose your opponent makes the argument, as she has made, that the note itself is extremely alarming. It is an anonymous accusation of criminal activity occurring at the school, and it is not responsibly brought to the attention of the school officials. It is posted on the mirror in the girls' bathroom, intended for other girls to see that. Your opponent argues that, regardless of the later investigation, that note was so inherently, potentially upsetting to the school that, even though the justification they rely on is bullying post-investigation, nonetheless, she can be disciplined for the mere act of putting up such a note because it had the potential to cause some real concern in the school. Thank you, Honor. And I'll leave the due process concerns to one side. Please. We're talking about the First Amendment. Yes. So, first, the school is asking for a new legal standard here. And to say that a note is alarming in the school's view is not a legal standard. And when you look to the facts of what the court found here, this was a note about sexual assault and critiquing the school's handling of it that the school conceded was well-meaning and made with good intentions, that the district court found was non-frivolous, and certainly the problem of sexual assault in discussing rape in schools is an alarming issue. It's also a common issue. Even in Maine, 16% of girls and 39% of transgender students have experienced sexual assault. Are you suggesting Maine is an exemplary state and even in Maine? No, Your Honor. I simply should have said specifically in Maine. So, to say that it's alarming is really not to answer the question. And certainly in Tinker, many students who perhaps had family members or friends who had died in the Vietnam War would have found advocacy against the war to be alarming or distressing, but these are important topics of public concern and ones that uniquely affect students' own lives. And so to say that something in the school's view, certainly the school would prefer to project the image that sexual assault doesn't happen in their school. And certainly they even sent that to the press where they said there's no rapists here. And the district court acknowledged that the school exhibited a relatively intense desire to control the view of the school. And so that doesn't mean that the school has the ability. That really implicates the core concern in Morse that Justice Alito articulated in his concurring opinion that the balance that Tinker struck is the correct one for most cases, especially for most cases. And when disturbing that balance could enable schools to silence speech that they don't like or that is critical of them or that they view to be inconsistent with the school environment that they want to foster. So the administrators in the end say, well, we did understand the you and you know who it is to be a reference to the school administration. But as the note is posted, it's not clear who the you is. The you could be a reference to those who use the women's room. So I'm going back to the notion of putting aside the question of the justifications actually offered. And I'm going to ask you to explain to me what is the correct period of time for us to look at this reasonable apprehension question. The time again to look is at the moment of punishment. And that's appropriate not only for the reasons I discussed before, but also on this record at pages 15 and 17, I believe, of the Joint Appendix and also at page 90. The record reflects that the school in the early stages of the investigation had articulated repeatedly that it would not be disciplining the students whoever had posted the note. And it wasn't until the school had realized that it was A.M. who they knew as an advocate and that they then, and after she had spoken to the press, that they chose to punish her. So I'll leave the press out of this. I think you've adequately answered. I turn to Judge Selya. Thank you, Judge Lynch. Let's pick up where Judge Lynch left off. At the time the note is discovered, which I continue to believe has considerable importance in this case, how could there be any interpretation of that note but that the you, and there's a rapist in the school and you know who it is, referred to the students? Is it plausible that someone would want to communicate with the administration by posting a note in a bathroom facility used only by students? I take your point, Your Honor, and I would again repeat that the school at J.A. 29 itself. I know what you said, but that doesn't answer my question. It seems to me that at that point in time, the logical, plain and ordinary meaning of you is the people who you expect to read the note, and I can't see how you would expect anyone but women students to read the note if it's posted in the women's restroom, which is a student facility, not a teacher's facility. Or an administration facility. Yes, so I would repeat that the you is appropriately a rhetorical device, and that A.M. had meant it and indicated that it was... But I'm not concerned with how A.M. had meant it. I'm concerned with what a reasonable school administrator would think when that note was discovered in those circumstances. Yes, and again... Is there any meaning that a reasonable school administrator could give to you in that context at that time other than that the you referred to the women students in the school? Two responses, Your Honor. One is I would just quickly repeat that the school did interpret it that way, so that was their reasonable interpretation. And second, that regardless of whether the you is referring to the school, which it was, but even if it was also a rhetorical device referring to other students in the bathroom, that doesn't diminish its effect as being on a matter of public concern. That's a different issue, counsel. That's a different issue. But before I can figure out, all right, you have to bear with me. I'm a little slow. And before I can figure out, all right, whether something touches on a matter of public concern or where it falls within the Tinker taxonomy as lost by Colmeyer and Morse and Frazier, all right, I've got to know what a reasonable interpretation of the note would be when it was discovered. I think you've now answered that question. Secondly, we agree that when the note was discovered, all right, there was no way for any school administrator to know who the author was. There was nothing about the note that indicated its authorship to anyone who observed it. Isn't that correct? That's right. All right. It's totally anonymous. Third, is there anything in the district court's opinion, as you read it, that suggests that Judge Walker gave any deference at all to the school administrators in connection with their conclusion that the note was an act of bullying? Your Honor, on the deference point, the court applied... First answer the question. Can you point me to anything in Judge Walker's opinion that indicates that he did give any deference to the administrative judgements? So if the court is asking whether the judge applied deference in the way that we think of, you know, sort of a substantial basis, you know, in the way that we would do an APA-style review, the court did not apply that type of deference because it would be inappropriate under the Tinker standard. But what can you point to that indicates that the court applied any deference? The court applied the Tinker standard under which the burden is on the school. I understand that, but that's not the question I'm asking. You know, Judge Walker's opinion is not war and peace. It's a relatively brief document, and if it contains something that indicates that the judge appreciated that some deference was due to the administrators and that he took that into account, you ought to be able to point me to a particular sentence or passage. I haven't been able to find it. If I had found it on my own, I wouldn't be asking you about it. Your Honor, to answer your question directly, in the type of deference that I believe you're referring to, the court did not – he held the school to their burden to show that there was some causal relationship in a connection of rights, in connection with an alleged invasion of someone else's rights. And on this record, the court also made factual findings that the school's motivation may have been actually to control the image of their school and not necessarily associated with the invasion of rights. I'm going to take that as a no answer to my question, since you still haven't pointed me to anything. Now, it may make you feel better to make these speeches, but when you're asked a direct question, I'd appreciate a direct answer. Apologies, Your Honor. Let's move on. Has our court ever applied the Tinker Doctrine outside the area of core political speech? Your Honor, I'm not aware of very many cases in the First Circuit applying Tinker at all. So, to answer your question directly, I'm not aware of that. But other circuits certainly have. So, you're asking us, and you asked the district court, to extend Tinker to something that many people would think is not core political speech. In my mind, that doesn't mean that it's speech that shouldn't be protected to some extent. But it seems to me that outside the area of core political speech, that protection has to be balanced, as indeed the court has done in the Colmeyer-Fraser-Morse line of cases, where they have balanced the speech and its purposes and effects with the need within the school setting for some administrative responsibility. And I'm curious as to whether you think that if we were to decide, if we were to decide that Tinker does not apply to this particular speech, would your client prevail under a standard similar to that that the court used in Colmeyer-Fraser-Morse? If the court, as your Honor knows, we have many arguments about why Tinker applies here and why every other circuit to decide that. Counsel, answer the question. Put Tinker aside and answer the question. I apologize. It would require a remand from the court to evaluate on the facts that, it would require a remand from the district court to reevaluate on the facts at issue. But there are enough facts here in your judgment that even under a Colmeyer-Fraser-Morse analysis, your client could still prevail? Yes, because there are facts regarding pretext that we would press under a different standard. All right. That's helpful. Now, let me go to a question that Judge Barron asked your sister. If the record is in equipoise about whether a reasonable school administrator could or could not reasonably determine that this note was an exercise of bullying, you will recall that Judge Barron asked, who would prevail at the preliminary injunction stage in that event? And what would your answer to that be? Tinker puts the burden on the school to establish either the substantial disruption or the invasion of rights. We all agree that bullying is an invasion of rights. And if the record is in equipoise, who would prevail? The petitioner, the plaintiff, who has engaged in free expression because the school bears the burden. Wait a minute. You say the plaintiff. But how can that be so? Because under the preliminary injunction standard, as I understand it, part of the plaintiff's court burden is to establish, as a condition preceding to obtaining the preliminary injunction, that she has a likelihood of success. And in my mind, a likelihood means more than 50%. That if the evidence is 50-50 on a point, that the person who has the burden of proving the likelihood cannot prevail. So why wouldn't that, on Judge Barron's hypothetical, answer the question? The plaintiff certainly has the obligation to establish that she engaged in protected speech and that the retaliation against her was because of that speech in a typical First Amendment retaliation analysis. And the fact that those two issues aren't meaningfully disputed here don't undermine the fact that she did bear the burden to establish them. But just in the same way, in a different free speech case that's outside the school context, if someone had raised at the preliminary injunction standard an issue of free speech that was viewpoint-based, as this one is, then the government would be at the burden to establish, to qualify under the strict scrutiny standard and show a compelling state interest that's narrowly tailored. So similarly here, because of the unique school environment, Tinker does provide a lower and a more flexible standard. But once A.M. has shown protected speech that has been retaliated against, it is the school's burden to satisfy the Tinker framework and to show that there's either a substantial disruption or that there has in fact been an invasion of rights. And here, the court made a close factual analysis of causation, which is a very fact-bound determination. So the only question on appeal is whether that was clear error. Well, that's not the only question on appeal. That's not the only question on appeal. The question on appeal is abuse of discretion, is it not? Yes, John. And an error of law is always an abuse of discretion, a material error of law. So if the district court applied an incorrect legal standard, such as failing to take into account deference, if deference to the administrators were required, and I'm saying this hypothetically, that would require a remand. So you've got to be very careful about how narrowly you attempt to limit the issue on appeal. I have no further questions, Judge Lynch. Judge Barron? Okay, let me pick up where we just left off. And for purposes of this part of the questions I want to ask you, again, just assume the Tinker framework applies and that we're dealing with protected speech. And I want you to assume as well that the school district, for purposes of now applying the Tinker framework, is stuck with the justification they gave for the punishment of the speech at issue, which was bullying. Okay, so assuming all of that, what do we do about this last point that Judge Selye was asking you about, which is that for you to get the preliminary injunction, or if you're required to get the preliminary injunction, there needs to be a likelihood of success on the merits. And if the evidence is unclear as to whether an administrator had a reasonable basis for concluding that there was bullying, how can you show that you have a likelihood of success? In this context, as I was describing earlier, there is a sort of burden-shifting analysis, where, of course, A.M. bears the burden to show that she engaged in a protected speech and that there was retaliation. But because the school has engaged in viewpoint discrimination, has silenced her speech, and she satisfied her burden there, that the school, in order for the Tinker standard to mean anything, it has to mean that, and given that the Tinker court and subsequent courts have been clear, it's on the school district to meet that burden and to provide evidence in support of their action, that the school is bound. I realize that. The thing that is troubling me is we're at the summary judgment. Are we at summary judgment, or where are we? We're at preliminary injunction judgment. Which means what exactly? Because we're not just looking at the complaint because we've now got additional discovery, right? Well, we have the record from the preliminary injunction hearing. Yeah, which included some discovery, right? No, Your Honor. I think this was pre-discovery, but it included some material from the administrative hearings. Outside the complaint. Right. So we have material beyond the complaint, correct? Yes. Yes, we have affidavits. Okay. So with respect to those affidavits, I guess what I'm just trying to figure out is how to think about it. Because what is, you're right that the school has the obligation to meet, or I'll take you as right, that the school has the obligation to meet its burden of showing the invasion of the third party rights. And it hasn't yet met that burden. On the other hand, you haven't shown that it can't meet that burden. And by the district court's account of the evidence to date, it may well be that it can. It may well be that it can't. We don't know. So how does that equate to you having a likelihood of success in showing that it can't, that the burden won't be met? The likelihood of success question is whether AM has likely shown that the school improperly restricted her free speech rights. So she's shown, I think I don't want to repeat myself, but she's shown she has the free speech rights and that the school retaliated against her. So she doesn't have to prove at the end of the day after discovery that the school will never. At the end of the day, you have to show that the school district has not met its burden of showing that she bullied, or that they reasonably thought she bullied, right? Well, to the extent that. Yes, but. Judge Byron, if you'll permit me to interrupt. What the plaintiff has to show at the preliminary injunction stage is that she is likely to succeed at the end of the case on her Section 1983 claim. Not any freestanding First Amendment point, but that she's likely to succeed on her Section 1983 claim. Which means, I believe, you have to show that the school district will not be able to meet its burden to show that your speech, your client's speech, invaded the rights of the other person in the sense of reasonably being perceived to bully them, right? In a burden-shifting approach, I think that it's enough to point to the fact that the school has not shown it. AM has presented her affidavit testimony. There's the verified complaint that she signed, which is evidence. And she's explained that she wasn't targeting any student. And the note does, to some degree, speak for itself, because it names nobody, has no identifying characteristics. What do you do about the record that the district court also identified that points in the opposite direction the school district put forth? The district court resolved that question of fact against the school. And I understand that the court did so under the premise that it was the school's burden to do that. But it's somewhat of a legal issue at that point. I mean, given that there's no dispute here that the Tinker Standard imposes the burden on the school to make this justification, that at some point the question of whether AM has to come forward and point that out or, you know, it's a little bit academic. And another point is that as a legal matter – Here's one last piece on this point in the record that I found odd in the district court's opinion. Maybe you could help me with it. There's a reference to – I don't know if it's an affidavit or a declaration by your client – that she has tapes that would disprove the school district's position. Is that right? Yes. What's strange to me about that is there's no – I don't know why that would be credited at this point as worth anything. She hasn't disclosed the contents of the tapes. Is this just a representation by her about what tapes might be? Is that enough to get you a count? Should we count that for anything at the preliminary injunction stage as to whether there's a likelihood of success? No, and I don't think that the district court focused exclusively on that at all. The court took many things into account, not least the fact that AM's note didn't name anybody and wasn't directed at another student who, again, was unnamed. And so it doesn't even satisfy the legal standard for what is required under the main bullying statute, which requires that the speech be directed at or targeted at a student and that it actually have caused a hostile environment for the student. So the school's problem here isn't that the district court named numerous findings of fact on this preliminary record that included that the school seemed quite concerned with other things beyond any alleged bullying incident and that the school could not untangle the harms that are associated with the video and a caption that actually initiated the bullying investigation. Okay. Questions, which I now want you to direct your attention to whether the Tinker framework applies at all. Okay. And with respect to that issue, it seems to me there's good reason to focus on the communication inherent in the note at the time it was made as opposed to what we learned subsequently. It may be that's subject to dispute, but for present purposes, assume that's the case, that if we're trying to figure out whether Tinker applies, we look at the note at the moment the note is posted. Okay. If the note is properly read as an accusation of serious misconduct by a fellow student, anonymously and publicly posted, what is the case for saying, given Morris and Frazier, that that is the type of speech that is protected under Tinker? Courts have applied Tinker as a general rule. So the question is, does Morris apply? No. That was a case applying to the advocating for illegal drug use. Does Frazier apply? Is this lewd or obscene language? No. Does Kuhlmeier apply? Is this government-sponsored speech? No. In that case, Tinker applies, and that's what courts across circuits have done all across the country. I take that point, which is a positive point, which is any speech act that occurs on school grounds that's not covered by Kuhlmeier, Frazier, or Morris is protected by Tinker, and then you apply the Tinker framework. If one thought that that is too cramped a reading of the message that the court has been giving to lower courts in Morris and Frazier, is there an affirmative case to make as to why, for example, there's a Fourth Circuit case in which I think they don't treat an accusation that a student had a sexually transmitted disease, that that's not covered by Morris or Frazier or Kuhlmeier, but I could see a court concluding that that's not protected speech under Tinker. We don't go to the disruption standard. Do you think you would in that case also say Tinker applies? To the Kowalski case, your Honor, involving the website? Yes. Tinker did apply in that case, and it's flexible enough. But you think basically any speech that's not covered by those three cases is protected by Tinker, and we should proceed that way? Yes. And if I may, Your Honor, address one question about why even accepting the limitations you had applied about this is speech alleging, the Four Corners alleging wrongdoing by another student, again unnamed, that still is speech on a matter of public concern. It is certainly of concern to other students in the school, to the school community, to the public, when there are concerns and issues of sexual assault in the school. And the Duke and Goebbels, yes. Although there's a bullying policy, an anti-bullying policy, there's no other policy that the school district has articulated that an anonymous public posting of an accusation of serious misconduct by a fellow student would violate. Is that right? There's no time, place, manner, type restriction that the school has cited to. It's articulated, yes. Exactly, yes. Okay. Thank you. All right. It's time for the closing arguments, one-minute piece for the school department attorney, Huey. Thank you, Your Honor. I guess I'd start by saying that posting an anonymous sticky note charging that there's a rapist in the school and you know who it is, and stressing again that this is a rapist, not there are rapists, there are 35% or whatever the statistics we've heard, but there's a specific rapist in the school and you, the people who use the girls' bathroom, know who it is, is the functional equivalent of pulling a fire alarm. And when a fire alarm is pulled, that creates disruption, that creates the obligation to investigate, and that is, I think, clearly likely to cause disruption. That's what happened here. The school department found that note, thought it was likely to cause disruption, and it is at that point that it has the ability to restrict the speech. The fact that as it investigates and finds fact that makes the school administrators reasonably believe that this was an instance of bullying, an African-American student, and they took action to address that, does not mean that you have to sort of reanalyze whether or not the speech is protected. It was not protected because it was likely to cause disruption. Thank you. All right. Attorney Bond, and then I think we've actually had sufficient argument that we're not going to have any further rebuttal. So, Attorney Bond, you have one minute. Thank you, Your Honor. This case is about the Tinker Standard, and that is the appropriate and flexible approach to take when the exact issues in this case are presented, when there is the question of how do we protect student speech and ensure that students are able to raise issues that are of concern to them and other students in the school while also ensuring that the school environment is respected. And so in this case where there's been viewpoint discrimination, there's no allegation that AM fell awry of any existing or prior restriction on speech. Rather, the school targeted her speech specifically after the fact based in part on a video that AM didn't even know existed at the time that she posted the note. The Tinker Standard with regard to requiring the school to establish a substantial disruption or invasion of rights and putting that burden on the school is the appropriate and flexible standard to apply. And respectfully, there was no clear error in any of the court's factual findings, and that's the standard to apply on appeal. So for these reasons, we would ask the court to affirm the preliminary injunction granted by the district court. Thank you, counsel. That will conclude this case, and we will move on to the next case.